IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MOHANMAD KHAGHANI, )<br>      *Plaintiff* )<br>)<br>VERSUS )<br>)<br>RAY MABUS, Secretary, )<br>Department of the Navy, )<br>)<br>      *Defendant.* ) | | CASE NO. 2:15-cv-6039<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Mohammad Khaghani, through undersigned counsel, files this Complaint against Ray Mabus, Secretary of the Department of the Navy, and alleges the following:

## INTRODUCTION

1. Khaghani has been an employee of the Department of the Navy ("Department") since 1998. At all relevant times, he was employed in the Systems Engineering Division, Sonar and Electronics Branch, at the Stennis Space Center in Hancock County, Mississippi.

2. Khaghani's claims arise out of intentional discrimination, hostile work environment, and retaliation.

3. The Department has caused Khaghani to suffer direct financial harm, as well as physical and emotional distress. Among other things, he has been systematically removed from projects, excluded from important meetings, prevented from earning experience required for advancement, deprived of opportunities to earn overtime pay, and subjected to an environment where anti-Muslim sentiments are tolerated.

1

## PARTIES

4. Plaintiff, Mohammad Khaghani, is a person of the full age of majority domiciled and residing in St. Tammany Parish, Louisiana.

5. Defendant, Ray Mabus, is the Secretary of the Department of the Navy, an executive agency of the United States in Washington, D.C.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 1336 because the claims and causes of action in this matter arise under federal law and a Secretary of a department of the United States is being made a defendant.

7. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this Judicial District and the defendant is an officer of the United States.

## FACTS

8. Khaghani is a brown, Iranian-born Muslim man.

9. In April, 2012, Khaghani applied for and received a promotion to Electronics Engineer GS-13. In this position, his first level supervisor was Edward Gent and his second level supervisor was Aaron Laurent.

10. Initially, Khaghani was assigned as lead of the "HMR project" – a project that the previous employee in the Electronics Engineer GS-13 position had been leading.

11. In August, 2012, Melvin Broadus, a computer scientist and member of management who is outside Khaghani's chain of command, removed Khaghani from the "HMR project" so that he could give the project to Rebecca Martinolich, a white, American-born Christian with whom Broadus has a romantic relationship.

12. Thereafter, Broadus, Gent, and Laurent have systematically excluded Khaghani from meetings related to Khaghani's assigned duties, despite the fact that Khaghani is the Project Engineer. Khaghani has been excluded from sonar-specific training and engineering meetings. Khaghani has been excluded from any decision making on the HMR or any sonar project.

13. After Khaghani's removal from HMR, he was assigned simple tasks and was removed from engineering test coordinator tasks that would allow him to perform engineering-related work on ships in order to earn overtime pay.

14. Khaghani raised these issues of discrimination to his supervisors, Gent and Laurent, in 2012; however, in response, Laurent told Khaghani that "it all comes to this: either you want to work here or not." Laurent indirectly told Khaghani that his job was in jeopardy if he kept complaining about the discriminatory treatment he was experiencing.

15. Despite reporting his experiences of discrimination to Gent and Laurent, Khaghani continued to face discriminatory treatment. In fact, the discriminatory treatment intensified.

16. After Khaghani complained to Gent and Laurent, Claude Christopher commented in front of Khaghani that everyone with a foreign accent puts bombs on ships.

17. Khaghani reported Christopher's comments to Bill Fisher who was the EEO coordinator for Khaghani's office.

18. Khaghani filed an equal employment opportunity ("EEO") complaint on September 25, 2013.

19. After filing his EEO complaint, Khaghani experienced retaliation, which is ongoing, and further discrimination.

20. In early 2014, Donald Bourgeois hid equipment from Khaghani thereby preventing him from doing his job. Bourgeois was aware that Khaghani filed an EEO complaint.

21. Khaghani reported Bourgeois' conduct to Gent and Laurent; however, no action was taken against Bourgeois. In fact, Bourgeois was assigned work requiring travel, which was viewed as favorable because of the opportunity for increased overtime pay.

22. Later in 2014, Khaghani was working on board the HSL, which is a ship. Bourgeois showed up on the boat, got in Khaghani's face, and shouted at Khaghani, "Fuck you, you're a nobody. You're not good enough. You need to find a job somewhere else. You can't be working here."

23. Khagani once again reported Bourgeois' behavior to Gent and Laurent. Gent and Laurent took no action against Bourgeois.

24. In 2015, Bourgeois once again confronted Khagani on board the HSL and essentially repeated his actions in 2014: he screamed obscenities in Mr. Khaghani's face and told him he should not be working there.

25. Andy Gagnon, an independent contractor, witnessed Bourgeois tamper with Khaghani's equipment on board the HSL when Khaghani was not present. Bourgeois' actions caused damage to HSL equipment that Khaghani installed and rendered it nonoperational. Khaghani reported Bourgeois' actions to Broadus and wrote a report about it. The report went to Broadus, Gent, and Daryl Vaught. Instead of reprimanding Bourgeois, Vaught and Gent indefinitely prohibited Khaghani from being involved with work concerning HSLs.

26. The agency directed other employees to conduct actions on HSL despite the fact that Khaghani was the lead on the project, and Khaghani's co-workers have hidden equipment and expressed that they do not want Khaghani involved with their projects.

27. In April 2015, Khaghani applied for a position as Supervisory General Engineer. His resume, along with three others, was selected, which signified that he was qualified; however, he was the only individual not given an opportunity to interview. The position went to Claude

Christopher, a white, American-born Christian who was the same rank as Khaghani. Christopher is also the individual who told Khaghani that people with foreign accents put bombs on ships.

28. In August 2015, Khaghani applied for another position as Supervisory General Engineer. His resume, along with three others, was selected, which signified that he was qualified; however, he was the only individual not given an opportunity to interview. The position went to Daryl Vaught, another white, American-born Christian who was the same rank as Khaghani.

29. Throughout Khaghani's tenure with the Department of the Navy, he has heard various employees disparage Muslims two to three times a year by insinuating (or explicitly stating) that all Muslims are terrorists. In 2010, he heard an employee (the ship's Chief Mate) state in a meeting that when ships were preparing to dock, employees should monitor anyone that looks Middle Eastern near the dock because of potential terrorist activity, employees should watch out for Iranians, and Iranians look suspicious.

30. On other occasions, Khaghani has been singled out when boarding ships and asked for additional identification when everyone else could just walk on.

31. Khaghani has received favorable performance reviews since 2012.

32. The Department's Office of Complaints and Adjudication issued its final decision and a right to sue letter to Khaghani on August 19, 2015. Khaghani received the determination on August 21, 2015, which is less than 90 days from the date of this filing. Khaghani has satisfied all administrative requirements to file a lawsuit in federal court.

## CLAIMS

### FIRST CLAIM
### Disparate Treatment under Title VII of the 1964 Civil Rights Act

33. Khaghani re-alleges and incorporates by reference paragraphs 8-32.

34. Khaghani is a member of several protected classes under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e *et seq.*), including race, color, religion, and national origin.

35. Khaghani was subject to several adverse employment decisions, including but not limited to, a significant change in job duties and responsibilities, reassignment from the HMR and Sonar projects, exclusion from meetings and projects, prohibited from boarding the HSL, all of which has severely impacted his ability to earn overtime pay, unreasonably interfered with his ability to perform the duties of the Electrical Engineer GS-13 position, and prevented the advancement his career. Furthermore, he was prevented from interviewing for two positions despite being qualified, while all others qualified for the position were interviewed.

36. Khaghani is qualified for his current position, the duties of which have been taken away from him and given to Martinolich.

37. Khaghani was replaced by and/or treated less favorably than Martinolich on the HMR project. Martinolich is a white, Christian, American-born individual.

38. Khaghani was qualified for both the Supervisory General Engineer positions that he applied for in 2015, for which he was the only candidate who did not get an interview.

39. Christopher and Vaught were both interviewed for and received the position of Supervisory General Engineer over Khaghani. Both Christopher and Vaught are white, American-born Christians who were the same rank as Khaghani at the time of their hire.

## SECOND CLAIM
**Hostile Work Environment under Title VII of the 1964 Civil Rights Act**

40. Khaghani re-alleges and incorporates by reference paragraphs 8-32.

41. Khaghani is a member of several protected classes under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e *et seq.*), including race, color, religion, and national origin.

6

42. Khaghani was subjected to unwelcome harassment through anti-Muslim speech, verbal abuse, and had his work destroyed and hidden from him based on his status.

43. The harassment Khaghani experienced was based on his race, color, religion, and national origin.

44. The harassment affected the terms, conditions, and privileges of Khaghani's employment in that the environment is so abusive that Khaghani has suffered humiliation, physical and emotional distress, and it has interfered with his ability to perform his job at his normal level of proficiency.

45. The Department of the Navy knew that Khaghani was experiencing this harassment as he repeatedly complained to his supervisors, and the Department failed to take prompt remedial action. Further, Khaghani filed an EEOC charge in 2013 yet the harassment continues and the harassers have not been reprimanded.

### THIRD CLAIM
### Retaliation under Title VII of the 1964 Civil Rights Act

46. Khaghani re-alleges and incorporates by reference paragraphs 8-32.

47. Khaghani engaged in protected activity under Title VII when he opposed the discriminatory conduct he was experiencing by reporting it to Gent and Laurent. Further, Khaghani engaged in protected activity when he filed an EEO charge with the Department.

48. Khaghani was subject to several adverse employment decisions, including but not limited to, a significant change in job duties and responsibilities, exclusion from meetings and projects, and prohibited from boarding the HSL, all of which has severely impacted his ability to earn overtime pay, unreasonably interfered with his ability to perform the duties of the Electrical Engineer GS-13 position, and prevented him advancing his career. Further, the Department allowed Khaghani's coworkers to verbally harass him and make anti-Muslim statements, and

he was prevented from interviewing for two positions despite being qualified, while all others qualified for the position were interviewed.

49. The retaliatory actions began a few months after Khaghani reported discrimination issues to Gent and Laurent and filed an EEO complaint, and have been ongoing ever since.

## **PRAYER FOR RELIEF**

50. Khaghani respectfully request that this Court grant relief as follows:

   a. Declare that Defendant violated 42 U.S.C. § 2000e *et seq*.

   b. Award Khaghani the following:

       i. Lost overtime wages in an amount to be proven at trial.

       ii. Damages for mental anguish, inconvenience, and loss of enjoyment of life.

       iii. Reasonable attorney's fees.

       iv. Court costs.

       v. Lost salary from positions that he was qualified for and did not receive due to the Department's discrimination.

   c. Order the following:

       i. Defendant must stop discriminating against Khagani.

       ii. Defendant must prevent employees from harassing Khagani.

       iii. Defendant must reinstate Khagani as head of the HMR Project.

       iv. Defendant must allow Khagani to board and work without harassment on the HSL in order to properly fulfill his duties.

       v. Defendant must allow Khaghani to interview for jobs for which he is qualified.

      vi. Defendant must provide opportunities to Khaghani to earn the type of work experience that would qualify him for career advancement, similar to the opportunities his colleagues receive.

  d. Any other relief the Court deems just and proper.

Date: November 18, 2015

                                      Respectfully submitted:

**QUINN ALSTERBERG, LLC**

/s/: James V. King III
JULIE U. QUINN (#21923)
JUSTIN E. ALSTERBERG (#31015)
JAMES V. KING III (#36106)
855 Baronne St.
New Orleans, Louisiana  70113
Telephone: (504) 522-5607
Facsimile: (504) 561-6775
james@quinnalsterberg.com
*Counsel for Plaintiff Mohammad Khaghani*